Las Monjas Racing Corporation, Inc., demandante y apelante, *v.* Puerto Rico Ilustrado, Inc., José Coll Vidal y Angel Ramos, demandados y apelados.

Núm. 8207.—*Sometido:* Mayo 6, 1941. *Resuelto:* Junio 20, 1941.

*Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelante; *R. Cuevas Zequeira,* abogado de los apelados.

El Juez Asociado Señor Travieso emitió la opinión del tribunal.

La corporación demandante, dueña y explotadora de un hipódromo en la Capital de esta Isla, acudió ante la Corte de Distrito de San Juan, reclamando de la corporación editora del periódico *"El Mundo"* y de dos de sus directores, el pago de la suma de $100,000 como indemnización por los daños que alega haber sufrido con motivo de la publicación de ciertos informes que la demandante alega ser falsos.

En la demanda se alega que el 25 de mayo de 1939 los demandados, maliciosamente y sin causa o motivo para ello y tendiendo a exponer a la demandada al desprecio del pú-

blico y a perjudicarla en su negocio, publicaron, a sabiendas de que era falso, en relación con un asunto judicial que se tramitaba ante la Corte de Distrito de San Juan por *Rexach Racing & Sporting Corporation, Inc.,* v. *Comisión Hípica Insular,* lo siguiente:

"Falta de honradez en las carreras de Las Monjas y Las Casas. Las alega la Comisión, agregando que se verá obligada a tomar acción drástica. También acusa falta grave en *pool* de Las Casas y que caballos que corren en Las Casas y Las Monjas han sido adquiridos con fondos de personas interesadas en dichos hipódromos."

Se alega además que con tales palabras y a sabiendas de su falsedad, los demandados quisieron decir y dijeron e imputaron a la demandante, y así lo entendió el público, que la demandante celebraba las carreras en su hipódromo sin honradez y que tanto ella como sus directores tienen interés en los caballos que corren en los hipódromos de la demandante, lo que constituye la imputación de un delito castigado por el artículo 41 de la Ley Hípica (Ley núm. 11 de 1932, Leyes de 1931-32, pág. 195), en relación con el 38 de la misma ley, según fué enmendado por la ley núm. 17 de 1935 ((2) pág. 93).

Contestaron los demandados negando las imputaciones de malicia y de la tendencia por su parte a exponer a la demandante al desprecio del público. Y en oposición a la demanda alegaron que la información por ellos publicada, en sus titulares y en su texto, fué copiada al pie de la letra de una moción jurada, radicada en autos por la Comisión Hípica Insular, en un caso pendiente ante la Corte de Distrito de San Juan, titulado *"Rexach Racing & Sporting Corporation, Inc.,* v. *Comisión Hípica Insular,* sobre *injunction"*; que dicha información fué publicada de buena fe, con el propósito de dar a conocer a la comunidad las alegaciones que como querellada y en su defensa hacía la Comisión Hípica Insular; que dichas alegaciones constituían parte de un procedimiento judicial en el que estaba interesado el público que contribuye con su dinero al sostenimiento del deporte hípico; y que en

la información que ha dado origen a la demanda no aparece comentario alguno del periódico, ni afirmación alguna en cuanto a la veracidad de los hechos expuestos bajo juramento por la Comisión Hípica Insular.

En la vista del caso, al terminar la práctica de la evidencia ofrecida por la demandante, los demandados formularon una moción de *nonsuit* haciendo constar que no presentarían prueba en caso de ser declarada sin lugar, quedando así el caso sometido para su fallo. Fué éste adverso a la demandante, la cual, no estando conforme, estableció este recurso.

El único error que se imputa a la corte sentenciadora es el de haber declarado que la publicación en el presente caso tuvo el carácter de privilegiada y que los titulares tenían también ese carácter.

De la transcripción de evidencia resultan como hechos probados y pertinentes a la única cuestión envuelta en el presente recurso, los siguientes:

1. El día 24 de mayo de 1939 la Comisión Hípica Insular, demandada en el caso civil núm. 31,845 incoado por Rexach Racing & Sporting Corporation, radicó ante la Corte de Distrito de San Juan un escrito titulado: "Moción para que se anule la orden para mostrar causa y de entredicho dictada por el Hon. Roberto H. Todd, Jr., Juez de esta Corte de Distrito, el 23 de mayo de 1939." De dicha moción, que consta de 15 páginas, insertaremos solamente los subincisos 2 y 3 del inciso (*k*) del párrafo segundo, únicos que consideramos pertinentes para la decisión del presente recurso. Leen así:

"2. En las carreras celebradas el día 7 de mayo de 1939 en el Hipódromo Las Casas se jugó un número de cuadros que, por su cuantía y por la naturaleza de la jugada, revelan los propósitos de una o dos personas de obtener el premio total de la cantidad jugada en el *pool* en ese día; y, habiendo celebrado esta Comisión Hípica una investigación llegó a la conclusión de que el personal empleado por el Hipódromo Las Casas en el *pool* es inadecuado e incompetente, que el cómputo del *pool* no se realizó en ese día hasta después de celebrada la cuarta carrera de la tarde, y que si bien aparecía que todos los cuadros fueron depositados en las urnas antes de que comenzaran las carreras, los empleados del Hipódromo Las Casas rehusaron prestar su cooperación a la Comisión Hípica Insular para

determinar quiénes fueron las personas que hicieron las jugadas. La Comisión Hípica Insular alega que aproximadamente veinte o veinticinco mil combinaciones de *pool* se hacen en cada día de carreras; y, la falta de cooperación en uno de los hipódromos para determinar la forma y manera en que se hacen las jugadas y se cobran los premios es una falta grave, que la comisión no puede tolerar.

"3. Alega la comisión, por información y creencia, que un gran número de caballos que están corriendo en la actualidad en los hipódromos Las Casas y Las Monjas han sido adquiridos con fondos de personas que tienen grandes intereses en las entidades que explotan dichos hipódromos; y que se ha tratado de adquirir otros caballos por dichas personas a base de pagar sus precios correspondientes con un tanto por ciento derivado de los premios que dichos caballos obtengan, situación que implica una falta de honradez y moralidad de tal naturaleza en la celebración de estas carreras de caballos que obligarán a esta Comisión Hípica Insular a tomar una acción drástica en el asunto."

2. El mismo día 24 de mayo de 1939 dicha moción fué señalada para oír a las partes el 29 del mismo mes.

3. El día 25 de mayo de 1939, o sea el siguiente al de la radicación y señalamiento de la referida moción, la corporación demandada publicó en "*El Mundo*" el texto íntegro de la moción, con los titulares que aparecen al principio de esta opinión y que constituyen la base de la alegada causa de acción.

4. En 29 de mayo de 1939, la corporación apelante, como interventora en el caso pendiente entre Rexach Racing & Sporting Corporation y la Comisión Hípica Insular, solicitó la eliminación de la moción radicada por la Comisión Hípica Insular y especialmente la del subinciso 3 del inciso (*k*) del párrafo Segundo "por constituir los hechos que allí se alegan, hechos inmateriales, impertinentes, irrelevantes y no germanos a la causa de acción que se ejercita ni con el problema jurídico que surge en este caso."

5. En junio 6, 1939, la Corte de Distrito declaró con lugar la demanda de intervención de Las Monjas Racing Corporation y como consecuencia expidió auto de *injunction* contra la Comisión Hípica Insular y ordenó las eliminaciones solicitadas.

La demandante basa su alegada causa de acción en la sección 2 de la Ley para autorizar pleitos civiles por daños y perjuicios ocasionados por libelo y calumnia, aprobada en febrero 19, 1902 (sección 1685 Est. Rev.) que lee así:

"Sección 2.—Se entiende por líbelo la difamación maliciosa que públicamente se hace en contra de una persona, por escrito, impreso, signo, retrato, figura, efigie u otro medio mecánico de publicación, tendente a exponer a dicha persona al odio del pueblo o a su desprecio, o a privarle del beneficio de la confianza pública y trato social, o a perjudicarle en sus negocios; o de otro modo desacreditarle, menospreciarle o deshonrarle, o cualquiera difamación maliciosa publicada, como antes se ha dicho, con la intención de denigrar o deprimir la memoria de un muerto y desacreditar o provocar los parientes y amigos sobrevivientes."

Los demandados descansan su defensa en las disposiciones de la sección 4 de la misma ley de febrero 19 de 1902 (sección 1687 Est. Rev.), que dice:

"Section 4.—No se tendrá por maliciosa, ni como tal se considerará la publicación que se hace en un procedimiento legislativo, judicial, u otro procedimiento cualquiera autorizado por la ley. No se presumirá que es maliciosa la publicación que se hace: Primero: En el propio desempeño de un cargo oficial; Segundo: En un informe justo y verdadero, de un procedimiento judicial, legislativo u oficial, u otro procedimiento cualquiera, o de algo dicho en el curso de dichos procedimientos; Tercero: A un funcionario oficial, apoyada en causa probable, con la intención de servir al procomún, o de conseguir remedio a un perjuicio hecho a un particular."

La única cuestión a resolver es si la publicación de la moción constituye "un informe justo y verdadero" del procedimiento judicial que ante la Corte de Distrito de San Juan seguía Rexach Racing & Sporting Corporation contra la Comisión Hípica Insular, o si no lo es.

Al resolver esta cuestión en la afirmativa, la corte inferior se expresó así:

"Somos de opinión que la moción radicada por la Comisión Hípica Insular en el caso núm. 31,845, supra, formaba y forma parte de los procedimientos judiciales en dicho caso; que desde su radicación se convirtió en un documento público; que esta corte tomó acción sobre la misma al señalarla para vista; que dicho caso no era uno de interés particular entre dos partes que litigan sus derechos ante una corte, sino que era un litigio en el que intervenían de una parte las corporaciones dedicadas a la explotación de hipó-

dromos para la celebración de carreras de caballos y ciertos juegos que, de no haber sido autorizados expresamente por ley, no podrían explotar, y de la otra parte, la Comisión Hípica Insular, es decir, un organismo del Gobierno de Puerto Rico especialmente creado para regular y reglamentar todo lo concerniente al deporte hípico de Puerto Rico. (Véase el artículo 5 de la ley núm. 17 de 15 de julio de 1935.) Siendo, por lo tanto, dicho litigio uno de interés público general, y como tal con derecho el público lector de la prensa del país a conocer sus pormenores; que a ese efecto la publicación por 'El Mundo' de dicha moción es una de carácter privilegiado y, somos de opinión, además, que la omisión de publicar en los titulares la palabra 'implica' no constituye una variación de tal naturaleza que haga desaparecer el carácter privilegiado de toda la publicación, ya que también se omitió en los titulares otras palabras usadas por la Comisión Hípica Insular en la moción, entre ellas, falta de 'moralidad' también aplicada a la demandante y al Hipódromo Las Casas. Consideramos que el hecho de que esta corte, trece días después de radicada la moción y al resolver el caso en su fondo, declarara con lugar la eliminación de los párrafos que contenían esas aseveraciones bajo juramento de la Comisión Hípica Insular por ser materia inmaterial al *issue* del caso, no obligaba al periódico 'El Mundo,' ni a ningún otro, a esperar esa decisión antes de publicar dicha moción, siempre que al hacerlo no variara ni tergiversara el contenido de la misma ni hiciera imputaciones maliciosas y libelosas a las partes afectadas. En el caso de autos, el periódico 'El Mundo' nada comentó al publicar la moción, limitándose en el párrafo introductorio a decir que había sido radicada por la Comisión Hípica Insular.''

Las conclusiones precedentes están sostenidas por la jurisprudencia sobre la materia. La regla general que de ella se deriva es que cuando el alegado libelo consiste de titulares a la cabeza de un artículo o informe, el artículo o informe y sus titulares deben ser considerados como un solo documento, para determinar si la publicación es difamatoria. 40 A.L.R. 583; 52 A.L.R. 1438; 54 A.L.R. 1139, y 59 A.L.R. 1061.

■■ La corte de apelaciones del Estado de New York, en *Campbell* v. *New York Evening Post,* 245 N.Y. 320; 157 N.E. 153; 52 A.L.R. 1432, apartándose de la regla estable-

cida y sostenida por el peso de las autoridades, ha establecido la regla de que la publicación de alegaciones (*pleadings*) u otros escritos preliminares, hacia los cuales no se ha llamado la atención de ningún funcionario judicial y sobre los cuales no ha recaído acción judicial alguna, aun cuando hayan sido radicados, no caen dentro del privilegio concedido a las publicaciones de procedimientos judiciales, en ausencia de un estatuto que modifique la regla del derecho común.

Examinados los titulares y comparados con el texto de la moción publicada por los demandados, opinamos que dichos titulares son un índice justo y veraz del contenido de la moción.

Aun dentro de la regla estricta del estado de Nueva York, los demandados estarían protegidos por el privilegio reconocido por el estatuto. La moción por ellos publicada, no solamente fué radicada dentro de un procedimiento ya incoado y en plena tramitación, si que también fué objeto de acción judicial, pues el mismo día en que fué radicada, la corte ordenó y fijó día para la celebración de una vista. La publicación no fué hecha hasta el día siguiente al del señalamiento. Véanse: *Kimball* v. *Post Publishing Co.,* 19 L.R.A. (N. S.) 862; *Lundin* v. *Post Publishing Co.,* 52 L.R.A. (N. S.) 207, en los que se sostiene que el privilegio existe cuando la corte ha tomado alguna acción por haberse hecho algo más en el caso que la mera radicación de una alegación en la secretaría del tribunal. En el último de los casos citados se definen en forma clara y precisa los límites del privilegio:

"Empero, este principio está limitado a asuntos que realmente han sido objeto de acción judicial. No concede el derecho de publicar alegaciones hechas en demandas u otros escritos radicados en la corte, basándose meramente en que esos escritos han sido archivados en los archivos de la corte, o hasta que dichos escritos han sido traídos a la atención de la corte y se ha tomado alguna acción judicial con respecto a ellos."

■ Tratándose de una publicación privilegiada y no habiéndose presentado prueba alguna tendiente a demostrar

que los demandados actuaron con malicia al publicar el texto de la moción, opinamos que la corte inferior no cometió error al declarar con lugar la moción de *nonsuit* y al desestimar la demanda.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Sr. Todd, Jr., no intervino.